# United States Court of Appeals

## For the First Circuit

No. 15-2404

CHARKEEM HYATT,

Petitioner, Appellant,

v.

BRUCE GELB, Superintendent,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

David M. Skeels and Committee for Public Counsel Services, on brief for appellant.

Susanne Reardon, Assistant Attorney General, Criminal Bureau, Appeals Division, and Maura Healey, Attorney General, on brief for appellee.

October 19, 2016

**TORRUELLA**, **Circuit Judge**.  Charkeem Hyatt, petitioner-appellant, contests the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Hyatt argues that Massachusetts state courts failed to apply the United States Supreme Court's holding in Snyder v. Massachusetts, 291 U.S. 97, 122 (1934), in denying his request to be present during the jury view of the crime scene.  After careful consideration, we affirm the district court's denial of habeas corpus relief.

## I. Background

On federal habeas review, the findings of fact of a state court "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); see Sumner v. Mata, 455 U.S. 591, 592-93 (1982) (per curiam).  Accordingly, we must accept them unless convinced by clear and convincing evidence that they are erroneous.  Lynch v. Ficco, 438 F.3d 35, 39 (1st Cir. 2006) (quoting McCambridge v. Hall, 303 F.3d 24, 26 (1st Cir. 2002) (en banc)).  We take the facts as presented by the Massachusetts Appeals Court, which affirmed Hyatt's conviction, supplemented with other record facts consistent with the state court's findings.  Scoggins v. Hall, 765 F.3d 53, 54 (1st Cir. 2014).

### A. Trial

In July 2009, Hyatt was involved in the shooting of four people outside a bar in the Roxbury neighborhood of Boston,

Massachusetts. A grand jury in Suffolk County indicted Hyatt on the following counts: one count of unlawful possession of a firearm, one count of unlawful possession of ammunition, one count of possession of a loaded firearm, three counts of aggravated assault and battery with a dangerous weapon, three counts of assault with a dangerous weapon, and four counts of possession of a firearm in the commission of a felony.

Hyatt pled not guilty to all counts, and a jury trial commenced on February 6, 2012, before Justice Brady of the Massachusetts Superior Court. On February 8, Justice Brady discussed the logistics and rules for a jury view of the scene where the shooting took place, which would take place on the following day. Hyatt's trial counsel requested Hyatt's presence during the view. Justice Brady responded that Hyatt could not go because of security reasons. He added, "He's in custody. I can't bring him. I don't have enough security people for that. I've never had a defendant [attend a view], other than one who's on the street."

Later that day, Hyatt's counsel renewed her request that Hyatt be allowed to accompany the jury on the view. In response to the request, the court engaged in the following exchange:

> THE COURT: Look, I'm sorry. He's in custody for very serious charges. It's a very serious event. I'm not going to allow him to come on the view because I just don't have adequate security. Further, I can't have

him without chains out there, so the jury is going to be there. It just isn't a workable situation. So I understand that the [Massachusetts Supreme Judicial Court] has never changed the Judge's discretion about that, so if you want, you've made an objection, that's fine, I've overruled it. But I'm not going to allow it.

. . .

MS. ODIAGA: I think the jury is going to be made more aware of the fact that he is in custody by his absence.

THE COURT: I probably have done maybe thirty views without defendants there, and I never said anything special. If you can think of anything you want me to say, I'd be happy to do it, but I think probably most lawyers feel that it's better left unsaid. Maybe the jury will just assume that they never come. But if you can think of anything tomorrow, by all means I'd be happy to consider it, okay?

The next morning, the view proceeded as scheduled, without Hyatt in attendance. Both Hyatt's counsel and the prosecutor representing the Commonwealth were permitted to point out certain features of the scene to the jury, but neither was allowed to make any argument or offer other commentary. At no point before or during the view did anyone draw any attention to the fact of Hyatt's absence.

On February 16, 2012, the jury returned a verdict of guilty on all counts except the three counts charging him with assault by means of a dangerous weapon. Following the jury's verdict, Hyatt was sentenced to a term of twelve to fifteen years of imprisonment.

**B. Proceedings in Massachusetts Appellate Courts**

Hyatt appealed his conviction to the Massachusetts Appeals Court, alleging that his exclusion from the view violated his constitutional rights to due process and his presumption of innocence. The Appeals Court rejected his arguments and affirmed the conviction. Commonwealth v. Hyatt, No. 12-P-1257, 2014 WL 2178782, at *1-3 (Mass. App. Ct. May 27, 2014). It noted that it was bound by "a long-standing precedent that a defendant does not have the right to be present for a view and that a defendant's absence does not offend his rights under the United States Constitution or [the Massachusetts] Declaration of Rights." Id. at *1 (citing cases). Relying on this precedent, the Appeals Court held that Justice Brady had acted "well within his authority" when he cited "security" as the reason to deny Hyatt's request to attend the view. Id.

The Appeals Court also noted that even if exclusion from a jury view could constitute a due process violation, Hyatt had failed to make the required showing that that violation had caused him "substantial harm." Id. It also mentioned that it was unpersuaded by Hyatt's attempt to analogize Justice Brady's refusal to allow him to attend the view to allowing a defendant to be seen by the jury in prison garb or shackles, which requires particularized findings. Id.

-5-

Hyatt petitioned the Massachusetts Supreme Judicial Court for further review, but his petition was denied. Commonwealth v. Hyatt, 15 N.E.3d 762 (Mass. 2014).

Hyatt then filed a petition for habeas corpus relief under 28 U.S.C. § 2254 in the United States District Court for the District of Massachusetts, alleging that the trial court violated his due process and equal protection rights under the Fourteenth Amendment when it denied his request to accompany the jury on a view of the crime scene. The district court denied the petition, but granted a certificate of appealability. Hyatt v. Gelb, 142 F. Supp. 3d 198, 205 (D. Mass. 2015). This appeal ensued.

## II. Analysis

### A. Standard of Review

We review the district court's denial of habeas relief de novo. Sánchez v. Roden, 753 F.3d 279, 293 (1st Cir. 2014). "Our de novo review encompasses the district court's own 'determination of the appropriate standard of review of the state court proceeding.'" Id. (quoting Zuluaga v. Spencer, 585 F.3d 27, 29 (1st Cir. 2009)). The district court is not entitled to deference. Healy v. Spencer, 453 F.3d 21, 25 (1st Cir. 2006). Rather, in these cases, we must "determine whether the habeas petition should have been granted in the first instance." Sánchez, 753 F.3d at 293.

**B. Antiterrorism and Effective Death Penalty Act Standards**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see Hodge v. Mendonsa, 739 F.3d 34, 41 (1st Cir. 2013); Zuluaga, 585 F.3d at 29. Only a legal or factual error that is objectively unreasonable warrants relief. Cooper v. Bergeron, 778 F.3d 294, 299 (1st Cir. 2015) (citing White v. Woodall, 134 S. Ct. 1697, 1702 (2014)).

"An adjudication is on the merits[,] giving rise to deference under § 2254(d) of AEDPA, if there is a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Scott v. Gelb, 810 F.3d 94, 99 (1st Cir. 2016) (citations omitted) (internal quotation marks omitted). "[A] state-court adjudication of an issue framed in terms of state law is nonetheless entitled to deference under

section 2254(d)(1) as long as the state and federal issues are for all practical purposes synonymous and the state standard is at least as protective of the defendant's rights." Id. (alteration in original) (quoting Foxworth v. St. Amand, 570 F.3d 414, 426 (1st Cir. 2009)).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." Linton v. Saba, 812 F.3d 112, 122 (1st Cir. 2016) (internal quotation marks omitted) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of [the state court's] decision." Id. at 122-23 (alteration in the original) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Id. at 123 (quoting Alvarado, 541 U.S. at 664). "Thus, to obtain federal habeas relief, a petitioner must show 'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Richter, 562 U.S. at 103).

## C. Hyatt's Claims

Hyatt alleges that the Appeals Court's decision was contrary to clearly established federal law because it did not identify or apply the correct federal standard as to when a defendant has a right to be present at a view. He points out that the applicable standard was announced in Snyder, 291 U.S. 97, where the Supreme Court considered whether a defendant's exclusion from a view of the crime scene was a denial of due process under the Fourteenth Amendment, but notes that the Appeals Court did not even mention it in its decision or cite any other federal authority in support of its conclusions and, instead, relied on "a long line of state court decisions." He also posits that "whether to exclude a defendant from a view must be determined in the light of the whole record," but the Appeals Court failed to do so.[1]

Hyatt is correct that the Appeals Court did not cite Snyder or other federal precedent directly. We note, however, that the precedent on which the Appeals Court relied did so. Hyatt, 2014 WL 2178782, at *1 (citing Commonwealth v. Evans, 438

---

[1] In the state courts and the district court Hyatt also claimed that Justice Brady's refusal to permit his attendance at the view undercut his presumption of innocence, as it is similar to appearing before the jury in prison garb or shackles. Because this argument was not meaningfully discussed in his brief as a ground for relief before this Court, and it would fall outside of the scope of the certificate of appealability, we limit our discussion accordingly.

Mass. 142, 150-51 (2002) (citing Snyder, 291 U.S. at 107-08)). And, in any event, a state court need not cite or even be aware of Supreme Court cases to be entitled to deference under § 2254(d) "so long as neither the reasoning nor the result of the state-court decision contradicts them." See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam).

In this case, the Appeals Court held that a defendant does not have a right to be present for a view and that a defendant's absence does not offend his constitutional rights. The Appeals Court recognized that "the particular circumstances of a case may be such that events at a view may deny a defendant a fair proceeding and thereby deprive him of due process," but noted that a defendant making such a claim must show substantial harm and Hyatt failed to do so.

In Snyder, the Court noted that while a defendant has a right to be present at trial, "a view is not a 'trial' nor any part of a trial in the sense in which a trial was understood at common law." Snyder, 291 U.S. at 113. It further stated that "in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Id. at 105-06. The Supreme Court clarified that "[n]owhere in [its]

-10-

decisions . . . is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." Id. at 106-07. Accordingly, "[s]o far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."[2] Id. at 107-08. And "the justice or injustice" of excluding a defendant in a particular set of circumstances "must be determined in the light of the whole record." Id. at 115. The Supreme Court concluded in Snyder that the denial of the defendant's request to be present when the jury viewed the crime scene and the prosecutor and defense counsel pointed out to the jury specific things they wanted them to observe, did not constitute a denial of due process. Id. at 122.

Hyatt seems to interpret Snyder as the default being in favor of attendance unless a judge makes particularized findings based on the entire record justifying a defendant's absence from

_____

[2]  The Supreme Court noted that "fairness is a relative, not an absolute concept." Snyder, 291 U.S. at 116. "It is fairness with reference to particular conditions or particular results. 'The due process clause does not impose upon the States a duty to establish ideal systems for the administration of justice, with every modern improvement and with provision against every possible hardship that may befall.'" Id. at 116-17 (quoting Ownbey v. Morgan, 256 U.S. 94, 110-11 (1921).

-11-

a view.  The Appeals Court's interpretation of federal law, however, seems to be aligned with the district court's reading of Snyder as holding "that the default is that a defendant has no right to be at a view unless there are particular circumstances making such exclusion unfair."  Hyatt, 142 F. Supp. 3d at 204 (quoting Devin v. DeTella, 101 F.3d 1206, 1208 (7th Cir. 1996) ("The lesson of Snyder is that, if in any given case the exclusion of the defendant from a jury view is found to be a deprivation of due process, it is not because the Constitution guarantees the defendant an absolute right to be present; it is only because his absence, under the particular circumstances of his case, can be said to have denied him a fair proceeding.")).  It is unnecessary to determine which interpretation is more consistent with Snyder, as it suffices to say that the Appeals Court's decision did not contradict, nor was it an unreasonable application of, the Supreme Court's holding in Snyder.  See Mendonsa, 739 F.3d at 41-43.  We acknowledge that there might be a case where a defendant's absence from a view may deny the defendant "fair and just" proceedings and, thus, constitute a due process violation.  See Snyder, 291 U.S. at 105-08.  We note, however, that Hyatt did not make any showing to the Appeals Court that, under the circumstances of his case, his exclusion from the view denied him of a fair and just proceeding or thwarted his opportunity to defend against the

-12-

charges he was facing. The record shows that, as in Snyder, counsel for both parties did not present any evidence during the view, but merely pointed out particular aspects at the scene to the jury. In addition, Hyatt and his counsel had the opportunity to review existing photographs, video, and maps related to the view prior to trial. At trial, his counsel cross-examined the Commonwealth's identification witnesses about their opportunity to view the shooter and their truthfulness. He presented testimony of three witnesses to demonstrate that he was not the shooter. Finally, in addition to the lack of substantial harm, Hyatt was on trial for "very serious charges," and Judge Brady noted there was a lack of sufficient security personnel available.

In light of the above, we cannot conclude that the Appeal's Court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Linton, 812 F.3d at 123 (quoting Richter, 562 U.S. at 103).

### III. Conclusion

The Appeals Court did not rule "contrary to" or unreasonably apply "clearly established Federal law." Accordingly, we affirm the district court's denial of Hyatt's habeas corpus petition.

**Affirmed.**

-13-